Please proceed. Thank you, Your Honor. May it please the Court, the first issue for consideration is whether there was in fact a full and final judgment on the merits at the state level upon which to found res judicata or collateral estoffel. And that's the threshold test, whether there was a full and final judgment on the merits. At the state level, Respondent Braum sued Appellant Stein for unlawful detainer and won a judgment for possession. Appellant Stein appealed that judgment for possession to the Appellate Division of the Superior Court. And the Appellate Division of the Superior Court reversed the judgment. The actual words used in the memorandum judgment of the Appellate Division were judgment reversed, defendant to recover costs on appeal. That meant that it was an unqualified reversal. And the effect of an unqualified reversal, Your Honor, is one, to vacate the judgment, and two, to set the matter at large. And that means that it's as if the trial had never happened and no judgment had actually been rendered in the case. Well, the issue that really is at play in our case, though, didn't go up on appeal, did it? I beg your pardon, Your Honor? The issue at play in our case wasn't part of the appeal that you're talking about, was it? It was, Your Honor. And if the Court will turn its attention to tab five of Appellant Saksop's own record, in front of the Appellate Division of the Superior Court, Your Honor, there were four issues on appeal. And the third issue on appeal was the issue that the trial judge had improperly excluded evidence as to the affirmative defenses. And one of those affirmative defenses was the issue of housing discrimination. Now, the Appellate Division turned its attention to the base number four for the appeal and stated, because it's dispositive of the appeal, we will consider now the issues of rent control. But it ignored the other three, and that's what brings this case within the ambit and scope of the line of authority, starting from Moran Towing and culminating in the Newport Beach case of 2006 that was cited at this court after briefs had been completed. Well, to use your phraseology, it ignored the issue that's at the center of the case that we have here, right? Yes, Your Honor. So the reversal sent it back. The reversal following Newport Beach. Leaving that issue untouched. The reversal would follow the Newport Beach case law, Your Honor, which is that an affirmation or a reversal leaving untouched the unconsidered grounds. There's no issue of conclusion on the grounds that are not considered. Well, what would have happened if it did, had it gone back and then was pursued? Had it, you mean had it- I assume that the court below would have remained where it was on that issue. I mean, that was the law of the case at that point, undisturbed on appeal. The issue was, well, there's nothing in the record to support that, Your Honor. Yeah, and don't we need an evidentiary hearing to sort of find out what happened in the first instance, to what extent it was litigated? And that would be true were some record to have existed. But the base for the appeal was exactly that the trial judge at the trial level, in the state level, had not allowed any evidence on the issue of the affirmative defenses, and there was no record. So I would argue that the reversal was full and unqualified and that there's nothing to say that what would have happened at the trial court level. Once the issue was reversed and the case was set at large, it could have gone back to trial in the state court. But during that time, the case had already been filed in the district court. How do we know it wasn't fully and completely litigated in the trial court before it went to the appellate court? The onus is on the respondent hearing to show that there's some kind of full and fair litigation, and the record doesn't support it. The whole issue, therefore, is if res judicata is to be applied, it needs to be applied in a full and fair hearing. And the onus is on them to show that there was a full and fair hearing, and nothing in the record supports that. If I might take, if there's any further questions, and then I would give three minutes to my colleague. It appears there are no questions. Thank you, Your Honor. May it please the Court. To follow up on your question, Judge Trott, about whether there was a full and fair opportunity to litigate the affirmative defense of housing discrimination in the unlawful detainer. The answer is that there was not. And I would turn, Your Honor, to the case of Vella v. Hudgens, which addresses the issue of there is a limited... You're talking about whether there was a full and fair opportunity? Correct, Your Honor. There was not a full... There was not a full and fair opportunity. There was not a full and fair opportunity to litigate the affirmative... In the trial court. That is correct, Your Honor. And I would turn again to Vella v. Hudgens, in which the Court states that there is limited race judicata effect on unlawful detainers because the nature of UDs are that they're short. Some may proceed... Well, you're not talking about it in the abstract, and that's why I'm concerned about what really happened. Sure. Let's say there was a four-month trial with 400 witnesses, 60 experts, and 17,000 documents. Correct. Then Vella wouldn't be upset about that, would it? No, it wouldn't. See, that's the point. We don't know what happened here. Well, what we do know is that we have a virtually barren record like we do in Vella. What does virtually mean? I don't like adjectives and adverbs. That the proceedings... Well, we have no recorded or transcribed proceedings. All we have is the judgment by the trial court in the unlawful detainer in which it says judgment is to the appellees in that case. There is absolutely no discussion about housing discrimination or about any of the affirmative defenses, anything substantive to say that this issue was addressed. And again, turning to Vella, it also says that things you would look for is, is there any record that the factual issues were litigated or the depth of the court's inquiry? I'm sorry to interrupt you, don't we have an affidavit from opposing counsel saying that the hearing lasted for a few hours and that it did discuss the discrimination issues? The affidavit from the appellee's attorney, Your Honor, does state that the unlawful detainer lasted a few hours. And I would note that Vella, the trial lasted two hours. So there's not much difference there. In addition, it says defendants presented evidence that defendants had been unlawfully evicted due to plaintiff's religious discrimination. But all it says is that evidence was presented. It says nothing more as to what the court, the trial court, did with that evidence, if it considered it, if it rejected it. And that was one of the issues that went on appeal, that the evidence was not considered about the affirmative defenses. So therefore, I feel that this case is much more akin to Vella than a case like Wood, where we do know that there was an unlawful detainer with a seven-day trial, where it was replete with findings of fact, where that was a highly typical case. But here, where you have virtually a record lacking of any sort of adjudication on these discrimination issues, there's simply nothing there. And I'd just like to also mention, Your Honor, that in general, when you look at the summary nature of an unlawful detainer, you have to consider what we're looking at here, is that this is an unrepresented tenant. And in California, nine out of ten cases, it's the same thing. You have an unrepresented tenant. You're eating into counsel's rebuttal time, so we're going to go to the appellee. Thank you. Thank you, Your Honor. Good morning, Your Honors. Good morning. I'm Jens Kepke, Grannis Martin, appearing for appellees. There is a determination by the district court here that, in fact, the issue of discrimination was actually litigated. Based on what? Hm? Based on what? What supports that conclusion? The conclusion's based on, as Judge Murguia pointed out, an affidavit by the attorney talking about what happened at the litigation. But what does that prove if the evidence was presented? That begs the question as to whether or not the district court ruled on the issue or considered the evidence, rejected the evidence. That doesn't tell us enough. Well, again, you have to remember that a UD judgment, like any other California state judgment, has with it implied findings, carries with it under California law implied findings that no discrimination existed here. The burden in that situation is on the losing party or any party, in this case the tenants, to ask for a statement of decision. If they want more specific finding, it's kind of like the difference between a specific verdict and a general verdict. You have to ask for a statement of finding. In a UD action? In a UD action. In fact, the treatise that covers UD says, you know, if you think you're going to take this on appeal, you probably ought to ask for a statement of decision. And, in fact, they hired an attorney. But what case authority says if you fail to ask for a statement of decision that that renders the judgment preclusive? What case says that? Well, it's not that a case says that, Your Honor. It's you have to accord, you have to accord implied findings into that judgment. Well, how do you explain Vella, then? Well, in Vella, the court made an actual determination that the issues were not actually litigated. That's the determination that was made below, and the California Supreme Court had to live by that, just like this Court has to live by the determination that it was actually litigated. No, we don't have to live by it. Unless you find it clearly erroneous, clearly erroneous. Do you agree that the unlawful detainer actions are summary in nature? Yes. All right. And in this case, apparently, I don't know if it was your affidavit or one of the affidavits, apparently there was a markout on the affidavit from like a whole day to like a few hours. It was modified. Yes. And so we don't have, I guess I'm concerned that the record is not sufficient, that this was a full and fair hearing, especially if it involved discrimination issues. It appears that then it was appealed, and at the same time, and before the appeal came back, the district court ruled that this was after the appeal came back. It was after the judgment by the appellate division came back. So remember, there's another, there's two ways in which the tenants could have fleshed out the record if they had chosen to do so. One was to ask for a statement of decision at the UD stage. The other one was at the federal district court stage. When the court said, tell me why this wasn't actually litigated, they could have put on any evidence they wanted. And actually there's a third way in which they could have taken this on. If they really thought that this was not fully and fairly litigated at the UD stage, they could have appealed that issue in the state appellate court. They did not do so. Whose burden is it to show whether or not there was full and fair opportunity to litigate? Once the district court has made a determination. Before the district court makes a determination. At the district court level, the burden is on the party that wants to have a preclusive effect attached to it. But remember, once that determination is made by the district court, then essentially the burden is on tenants to show that it's clearly erroneous. Exactly, yeah. And can fulfill that burden by showing that there was not a sufficient showing made upon which the district court could predicate its ruling. Yes. And let me just go back to the, and I think Judge Trott focused on this, that in the state court, when the tenants appealed to the appellate division, they did not assert any of the discrimination issues. If you look in the appellant's opening brief, which was the only thing that was filed in that case, which is in tab three of our supplemental excerpts of record, you will not see any mention of discrimination issues. So they chose not to argue because maybe there was no argument, I don't know. They chose not to argue that it was not fully and fairly litigated at the UD level. Even though they made that exact argument with regards to rent control issues. Judge Feist focuses on that. In this case, the judgment was reviewed on appeals such that plaintiffs were afforded the opportunity to raise the defenses and complain if they felt it was warranted about the lower court's treatment of the discrimination claims. Therefore, the record supports the conclusion the affirmative defenses were litigated and resolved against plaintiffs in state court. And that's very important because even if you have a summary proceeding, first of all, you do have an opportunity if you want to put on your case to put it on. But if you choose to put them on and then you decide that you weren't fully and fairly treated, you have a remedy. And that's within the appellate system of the state court. When were the affirmative defenses actually presented? In the answer to the UD complaint. Right, but in terms of a proceeding. When were those? At the trial. At the trial, it's your position that they were fully and fairly presented and resolved? It's not just my position, but the district court's position, yes. Well, I'm just saying, where is that in the record that they were presented and resolved? They're presented by, shown in the record, number one, by the declaration from the attorney. Presented. How about resolved? Resolved by the judgment. Considered. The judgment, the UD judge could not have granted possession to the tenants unless he resolves the discrimination issues. You have to resolve all those affirmative defenses or you cannot grant possession. So he had to resolve. What about the rent control? He could have resolved that on the rent control issue. They're not alternative. They are not alternative. You have to resolve all of those affirmative defenses in favor of the landlord in order to grant possession. Okay, what case says that? Well, I don't think there's a case. You don't need a case to say that, Your Honor, because. It's empirical. I mean, you know, I don't mean to. Well, I'm just saying, if the rent control, there are a lot of cases where one issue is dispositive and you don't get to other issues. You're exactly right. And so why wouldn't the rent control issue be dispositive and you don't have to get to the affirmative defenses because the main cause of action fails? Let me explain that. Let's say that the trial judge would have resolved the rent control issues in favor of the landlord. Okay? That only, then if that happens, then possession goes to the landlord. But if he says, yes, landlord, you win on rent control, but no, landlord, you lose on discrimination. That's not what happened, though. That's my point. My point is, he said, landlord, you lose on rent control. You don't have to get to the affirmative defenses. No, you have to get to both, Your Honor, because even if he finds on rent control in favor of the landlord, unless he has to resolve, because if discrimination occurred, then his possession still doesn't go over. So he has to resolve both. No, the opposite. If he finds on rent control in favor of the tenant, why does he have to go to discrimination issues? He did not find rent control in favor of the tenant. He found it in favor of the landlord. So that's why he has to go to discrimination. He found rent control in favor of the landlord. When you say he, who are you talking about? The district, the unlawful detainer judge. Because other than the form of judgment against Appellant Stein, there was no written decision or findings of fact or conclusions of law upon him. And there wouldn't be. There never is unless the tenant asked for it. The tenant has the burden to ask for it, like in any other state court. Most superior courts, when they issue a judgment, don't explain their reasoning either, unless you ask for a statement of decision. It's no different than the fact that this is in U.D. is no different than if it happened in superior court or even many district courts don't always explain their reasoning. It's no different. And the same, at least in the California law, the doctrine of implied findings goes with every judgment that's issued. I understand your argument. It was the appellate court who said the trial court erred by finding in favor of the landlord on the rent control issue. Exactly. Only on rent control issues. And the fact that they didn't reach the discrimination issues, because they weren't even appealed, means that that partial reversal does not set the case at large and does not. But there was no qualifying language by the appellate court. Is that correct, by the appellate court division? No, there wasn't. In the California law, it's substance over form. You look at what the appellate court did in terms of what it reached rather than. Well, I think the case law is different. I think it says that if there's not a qualified reversal, then it's a judgment that puts it back to where we began. But in order to make the determination of whether it's a qualified reversal, Your Honor, you look to the entirety of the opinion or judgment by the appellate court, not just the last words of the disposition. And here, it's absolutely, there's no dispute that the issue of discrimination was not appealed and was not considered. It essentially was weighed, and so that part of the underlying judgment remains extant and preclusive. Does the California Court of Appeal limit itself to the matters that are in the brief, or does it look at the entire ruling below? First of all, it's important to recognize that this was not the California Court of Appeal. This was this appellate division. The Superior Court. The Superior Court, which, by the way, is important because the appellate division doesn't issue opinions. It issues judgments. So, in fact, another way to see a final judgment here is that this appellate division rendered a judgment, not an opinion. That judgment can be further appealed. And ended the case in all proceedings? What? And what the appellate division did ended the case in all proceedings? No, there is appellate relief possible, but it is that they issue judgments that from there can be carried forward. But why would they seek appellate relief of a judgment that was in their favor? Well, no, the others, they could have said you didn't reach the discrimination issues, for example, if they really wanted to. Because you're right. Both the appellate division and the Court of Appeal do have the right, you know, on a de novo review to reach any issue they want. They weren't asked to. They didn't. But it's not waived, then, if it can be reached. It is if you don't make an argument. What's the case law on that? Because you're saying that because they didn't appeal specifically on the discrimination issue, they waived it. What's the case law on that? Reyes v. Kosha, I think we have in our briefs. Which says? Which says that if you don't appeal an issue that you've waived, you've waived your rights to assert that it was wrongly decided. But we don't know what the Superior Court Appellate Division actually considered. We don't, because it could somehow be considered. Well, we do know because they gave us, they entered a judgment that said what they considered. They said exactly what they considered. They said these are the arguments that were made to us, and this is why we're partially reversed. Reyes v. Kosha in your brief where? Which brief? Let me pull that out. I'm sorry. It's on page 24 of the appellate brief. It's 65 Calat 4th, 451. Of your gray brief? No, I'm the appellate, so it's the red brief. All right, counsel, we understand your position. Thank you for your argument. Rebuttal. Thank you. I may please the court. Reyes v. Kosha, the citation is incomplete in the appellant's reply brief at page 10. We cite it comes from Tan v. California Savings and Loan, where it does say deemed, waived, or abandoned, but the court further says the rule as stated is largely for the convenience of the reviewing court. The court of appeal has the authority and the power to decide a case on any proper points, whether urged by counsel or not, and whether it's in the briefs or not. So that disposes of Reyes v. Kosha. Wait a minute. Why does it dispose of Reyes v. Kosha? It says it's waived. No, it's the court has the power. It's a citation, Your Honor.  Well, we understand that the court has the power to address an issue if it wants, but if it doesn't, then it's waived. No, Newport Beach, on the contrary, applies, Your Honor. If it has the power to do so and it doesn't matter whether it's raised in the briefs or not, then Newport Beach applies. It means there's no preclusive effect on something that was not considered because the court chose not to consider it. On the issue the court was addressing just a little while ago, there is actually a case on point called Drury v. Superior Court, 2003, which was cited to this court, which states that actually a landlord that gives a notice to quit, asking for possession of unit, can have a simultaneously good motive and a bad motive. And the court could actually find in favor of a landlord in award possession, even if it found that he had a bad discrimination motive, because Drury states, pursuant to the Civil Code, that a landlord can have a bad motive, a discriminatory motive, but as long as he has a simultaneous good motive, that good motive trumps under Drury v. Superior Court. So actually, when the Respondents' Council states that there are necessary implying findings, that's not true. The trial judge could find for the landlord on a 60-day notice to quit, a 60-day notice of termination, which is what was given here, on the basis that there was a charitable exemption that trumped rent control. There's your good motive. I want the place because I want to raise the rent, and I'm immune to rent control. I want more money. Now, your discriminatory motive would work under a federal housing claim, which is why these claims are not the same, but it would not be sufficient to trump Drury v. Superior Court. What about opposing counsel's representation that the court would not have reversed unless it implicitly decided the discrimination claims in favor of the landlord? I think that that's a statement based on the self-serving affidavit of Stephen Downey, which was crossed out in parts, and where he only said that evidence was introduced. It doesn't state anywhere that it was actually accepted. But he's saying the outcome would have been different if there had been a legitimate discrimination claim. But as this court, as Your Honor yourself said in its quizzes, the court, the appellate division, the Superior Court, chose to dispose of the issue in a judicially economical way because the rent control issue was sufficient to dispose of the appeal. It stated itself in its memorandum judgment, which is what's on the record, that we don't need to address bases one through three. We're going to address bases four because that's, quote, dispositive of the issue. And that's what happened in this case. So that's why I would argue to this court that Newport Beach applies, because the court had it in front of them. They had the discrimination issue as part of the affirmative defenses in front of them. And Respondent's counsel himself states that there was evidence attempted to be – evidence was introduced. It doesn't say it was accepted. It doesn't say it was considered. But it was introduced. And so the appellate division of the Superior Court simply disposed of the matter, and therefore Newport Beach applies, which is the controlling law in California once the 1865 Supreme Court case was declined to be followed. I'm not following you when you say it was introduced. Somehow that creates some kind of a disability. What do you mean it was introduced but not whatever – not considered? Your Honor, as I see the declaration of Mr. – of Attorney Stephen Downey, it says that defendant in that case, appellant in herein, introduced evidence of discrimination. Doesn't that mean it was part of the record in front of the court to be considered? But there's no evidence that the court actually admitted the evidence. And, in fact, part of the appeal was, Your Honor – It says introduced. It doesn't say admitted. It doesn't say offered. It says introduced. That's a term of art that means it was introduced in evidence. It was part of the record that could be considered. Yes, Your Honor. But in the final analysis, the court actually stopped the – the basis number three for the appeal was the evidence was actually excluded. And even though Attorney Downey says introduced, the record doesn't show what happened with that evidence. It doesn't show that Judge Rafferty at the trial court actually fully and fairly permitted the evidence and that it was actually fully and fairly litigated. And so the judgment of the appellate division is that we don't have to look at basis number three because basis number four disposes of the issue. And so it's not a partial reversal. This is an unqualified reversal. And lastly, Your Honor – thank you for the court's time – Rossi v. Carrick is a very interesting case which deals with unqualified reversal. It's a Supreme Court case. And it's very interesting that the Supreme Court case there said unqualified reversal, but it also said in dicta, or it said in its comments, actually on the facts the defendant should have won. And what happened when it went back to the trial court was that the trial court didn't let the plaintiff amend the pleadings and gave summary judgment to the defendants. And it went back on appeal, and the appeal court said, no, it doesn't matter what the Supreme Court said about what should have happened and that the defendant should have won. You're not allowed to do that. You have to retry the issue in its entirety. The words in the judgment don't mean a thing. What matters is it was an unqualified reversal. It said judgment reversed. All right, counsel, we understand your argument. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Trott, Rawlinson, Murguia